UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

AARON VAN NEUBARTH,

Plaintiff,

v.

COLLETE PETERS, BRANDON KELLY,
REED PAULSEN, CARRIE COFFEY,
SABRENA MCCAINE, DONALD
DRAVIS,

Defendants.

Case No. 6:18-cv-01730-AC

OPINION AND ORDER

_____

ACOSTA, Magistrate Judge:

Plaintiff Aaron Van Neubarth, an inmate at the Oregon State Penitentiary ("OSP") in the custody of the Oregon Department of Corrections ("ODOC") and proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants Collette Peters, Brandon Kelly, Reed Paulsen, Carrie Coffey, Sabrena McCaine, and Donald Dravis (collectively "Defendants") have violated his Eighth Amendment rights by failing to provide him adequate medical care. This court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

Page 1 – OPINION AND ORDER

Presently before the court are Defendants' Motion for Summary Judgment (ECF No. 28) on all claims, and Plaintiff's Motion in Ex Parte for Medical Injunction (ECF No. 24). For the following reasons, Defendants' motion for summary judgment is granted Plaintiff's motion for an injunction is denied.[1]

### Background[2]

In his Amended Complaint, Plaintiff asserts Eighth Amendment claims of deliberate indifference against several Defendants. Plaintiff alleges that he was diagnosed by Defendant Reed Paulson, M.D., OSP Chief Medical Officer, with irritable bowel syndrome almost ten years ago. (Am. Compl. ¶ 13, ECF No. 19.) Plaintiff contends that he was prescribed Bentyl for his symptoms, and that side effects of the medication have caused him years of pain and suffering. (*Id.*) Plaintiff alleges that his evening "sedative psych medication" causes him constant pain and insomnia. (*Id.*) Plaintiff contends that "his condition causing IBS diagnosis is in some way related to physical response of reaction to psych medication that went untreated and remains unresolved." (*Id.*) Plaintiff alleges that Dr. Paulson has continued to let him suffer in constant pain and without sleep. (*Id.*) Plaintiff asserts that Dr. Paulson has refused to rule out gallstones as the cause of his pain. (*Id.*)

Plaintiff contends that Dr. Paulson failed to diagnose his hernia before it became unmanageable, causing him extreme abdominal pressure and restricting his activity. (*Id.* ¶ 14.) Plaintiff contends that Dr. Strauss diagnosed an umbilical hernia in January 2017, and

---

[1] The parties have consented to jurisdiction by magistrate judge, pursuant to 28 U.S.C. § 636(c)(1).

[2] The facts are taken from Plaintiffs Amended Complaint and are viewed in the light most favorable to him.

recommended surgical repair, but that the Therapeutic Level of Care Committee ("TLCC") denied that request.  (*Id.*)  TLCC denied surgery, finding that Plaintiff's hernia is reducible.  (*Id.*) Plaintiff alleges that Defendants have denied his requests for pain management, and that he has a vertical separation from the umbilical hernia site to his breastplate that requires abdominal wall reconstruction.  (*Id.*)  Plaintiff alleges that Defendant Donald Dravis, OSP mental health services contract psychiatrist, has ignored his reports that his medications are causing harmful effects, has refused to make adjustments to his medications or inform others of his suffering, and has discontinued some medications and started others, causing increased harmful effects.  (*Id.* ¶¶ 9, 17.)

Plaintiff alleges that Defendant Collette Peters, Director of ODOC, has a duty to provide medical care and continues to deny him access to appropriate care.  (Am. Compl. ¶¶ 4, 11.) Plaintiff contends that Defendant Brandon Kelly, Superintendent of OSP, is aware of his need for surgery and continues to deny him surgery.  (*Id.* ¶¶ 5, 12.)  Plaintiff alleges Defendant Carrie Coffey, OSP Medical Services Manager, was involved in the TLCC decision denying him surgery. (*Id.* ¶¶ 7, 15.)  Plaintiff asserts that Defendant Sabrena McCaine, OSP chronic pain nurse, has treated Plaintiff as a nuisance and is biased against him.  (*Id.* ¶¶ 8, 16.)

Plaintiff contends that he has submitted numerous grievances concerning Defendants' behavior.  (*Id.* ¶¶ 18-20.)  Plaintiff argues that he stopped taking his evening psych medication because it increases his pain and causes insomnia.  (*Id.* ¶ 21.)  Plaintiff asserts that he submitted a grievance on December 5, 2018, contending that he discovered what was causing his IBS and resulting complications, and that Defendant Dravis is failing to respond to his life-threatening

condition.   (*Id.* ¶ 22.)   Plaintiff seeks transportation to a medical facility for diagnostic testing and treatment for his symptoms.

On March 27, 2019, Plaintiff moved for a medical injunction.   On April 11, 2019, Defendants moved for summary judgment.   The court analyzes each motion separately, beginning with the summary judgment motion.

*Legal Standards – Summary Judgment*

To prevail on their motion, Defendants must show that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law.   FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) ("If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56.").   The court must construe the evidence and draw all reasonable inferences in the light most favorable to Plaintiff. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

Pro se pleadings are "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).   "This rule protects the rights of pro se litigants to self-representation and meaningful access to the courts, . . . [and] is particularly important in civil rights cases." *Pouncil v. Tilton*, 704 F.3d 568, 574-75 (9th Cir. 2012).   However, "there is no authority for the proposition that, on motion for summary judgment, that rule operates to lighten the pro se litigant's obligation to show a genuine issue of material fact for trial through the presentation of specific, admissible

evidence." *Epling v. Komathy*, Case No. CV 10-5862-GAF (RNB), 2011 WL 13142131, at *1 (C.D. Cal. Dec. 5, 2011).

*Discussion – Summary Judgment*

Defendants advance two grounds for summary judgment: (1) Plaintiff has failed to properly exhaust his administrative remedies prior to filing his Amended Complaint; and (2) Plaintiff's Eighth Amendment claims concerning his gastrointestinal issues and surgical hernia repair are barred by issue preclusion.

I.    Plaintiff Has Not Exhausted All Grievances Identified in the Amended Complaint

A.    *Standards*

Under the Prison Litigation Reform Act (PLRA), inmates must exhaust all available administrative remedies before filing a court action to redress prison conditions or incidents, including § 1983 actions.    42 U.S.C § 1997e(a).    The exhaustion requirement is mandatory and requires compliance with both procedural and substantive elements of the prison grievance processes.    *Woodford v. Ngo*, 548 U.S. 81, 84, 90 (2006).    To meet this requirement, inmates must complete the administrative review process and comply with all applicable procedural rules by appealing a grievance decision to the highest level before filing suit.    *Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005); *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009).    This provision requires pre-litigation exhaustion and mandates dismissal "'when there is no *presuit* exhaustion,' even if there is exhaustion while the suit is pending."    *Lira*, 427 F.3d at 1170 (emphasis in original) (quoting *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) (per curium)).    The exhaustion requirement "applies to all inmate suits about prison life" that do not

involve the duration of a prisoner's sentence. *Nettles v. Grounds*, 830 F.3d 922, 932 (9th Cir. 2016) (citing *Porter v. Nussle*, 534 U.S. 516, 532 (2002)).

The PLRA strengthened the exhaustion requirement such that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford*, 548 U.S. at 85 (citation omitted). "Prisoners must now exhaust all 'available' remedies . . . even where the relief sought – monetary damages – cannot be granted by the administrative process." *Id.* (citation omitted). When a prisoner files a "mixed" complaint raising both exhausted and unexhausted claims, the court must examine how intertwined the claims are to determine whether the exhausted claims may proceed independently. *Lira*, 427 F.3d at 1175. If the exhausted and unexhausted claims are not intertwined, courts should dismiss the unexhausted claims and resolve the properly exhausted claims. *Id.* Where the exhausted and unexhausted claims are "closely related and difficult to untangle," courts should dismiss the defective complaint with leave to amend to allege only the exhausted claims. *Id.* at 1176. "Exhaustion requirements apply based on when a plaintiff files the operative complaint[.]" *Jackson v. Fong*, 870 F.3d 928, 935 (9th Cir. 2017); *see also Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir. 2005) (finding that "[t]he filing of the amended complaint was the functional equivalent of filing a new complaint, and it was only at that time that it became necessary to have exhausted the administrative remedies against the state defendants").

Exhaustion of administrative remedies is an affirmative defense properly raised in a motion for summary judgment. *Albino*, 747 F.3d at 1166. Thus, Defendants have the burden of establishing that Plaintiff had an available administrative remedy, and that Plaintiff failed to exhaust that remedy. *Williams v. Paramo*, 775 F.3d 1182 (9th Cir. 2015). If Defendants make that showing, Plaintiff must produce evidence showing that the available administrative remedies

Page 6  – OPINION AND ORDER

were effectively unavailable to him.    *Albino*, 747 F.3d at 1172 (discussing burden-shifting process on exhaustion at summary judgment under PLRA).    The ultimate burden of proof remains with Defendants.    *Id.* (citing *Jones v. Bock*, 549 U.S. 199 (2007)).

       B.      *Inmate Grievance System*

       Defendants have submitted evidence detailing that inmate grievances at OSP are processed according to the ODOC Inmate and Grievance Review System, found in the Oregon Administrative Rules ("OAR"), Chapter 291, Division 109.    (Decl. Adam Kidwell Supp. Defs.' Mot. Summ. J. ("Kidwell Decl.") ¶ 6 & Attach. 2, ECF No. 30.)    Inmates are encouraged to communicate informally with line staff as the primary procedure to resolve disputes.    OAR 291-109-0100(3)(a); Kidwell Decl. ¶ 7.    If a dispute cannot be resolved informally, "it is the policy of [ODOC] to permit and encourage inmates to seek resolutions of issues or disputes using the department's internal inmate grievance review and appeal system."    OAR 291-109-0100(3)(b); Kidwell Decl. ¶ 7.    OSP inmates are advised of the grievance process during admission and orientation when they first arrive at OSP.    Kidwell Decl. ¶ 8.

       The processing of inmate grievances consists of three levels of review.    To begin the process, an inmate must submit a signed grievance form to the functional unit grievance coordinator within 30 calendar days of the date of the incident giving rise to the grievance.    OAR 291-109-0150(2), (4); Kidwell Decl. ¶¶ 11-13.    Upon receiving the grievance form, the grievance coordinator must date stamp and log the form and provide the inmate with a receipt.    OAR 291-109-0150(3); OAR 291-109-160(1)(a).    Unless further investigation is necessary, the grievance coordinator must process the grievance within 45 days, and staff provides an initial response to the inmate.    OAR 291-109-0160(2); Kidwell Decl. ¶ 12.

Page 7  – OPINION AND ORDER

The inmate may appeal the denial of the initial grievance using a grievance appeal form, which must be submitted to the grievance coordinator together with the original grievance, attachments, and staff responses, within 14 days from the date the grievance response was sent to the inmate.   OAR 291-109-0170(1)(a), (b); Kidwell Decl. ¶ 14.   The scope of the original grievance cannot be expanded, and no additional information may be submitted, unless the information was unavailable when the original grievance was filed and the information is directly related to the issue being grieved.   OAR 291-109-0170(1)(a)(A).   The functional unit manager must respond to the appeal within 30 calendar days from the date the functional unit manager receives it.   OAR 291-109-0170(1)(c).

Finally, the inmate can appeal the decision of the functional unit manager by submitting a grievance appeal form within 14 days from the date the first appeal response was sent to the inmate. OAR 291-109-170(2)(c); Kidwell Decl. ¶ 16.   This second grievance appeal, which is decided by the Assistant Director, is not subject to further administrative review.   OAR 291-109-0170(f). The Assistant Director must respond to the appeal within 30 calendar days from the date the Assistant Director receives it.   OAR 291-109-0170(e).

C.     *Plaintiff's Grievances Attached to Amended Complaint*

Plaintiff attaches five grievances to his Amended Complaint, including the following: OSP-2016-10-006, OSP-2017-12-007, OSP-2017-12-058, OSP-2018-12-025, and OSP-2018-12-027.   (Am. Compl., ECF No. 19 at 10-71.)[3]   In Grievance OSP-2016-10-006, dated September 30, 2016 and received by OSP on October 4, 2016, Plaintiff alleges that he suffers from severe

---

[3] Plaintiff has included the same documents in various places in the record.   For clarity, the court includes the CM/ECF page numbers whenever possible.

digestive complications, weight gain, abdominal wall distention, and an umbilical hernia with abdominal wall damage. (*Id.*, ECF No. 19 at 10.) Plaintiff complained of constant pain and difficulty eating and sleeping. (*Id.*) Plaintiff attached several "kytes" or inmate communication forms, related to his request for treatment and diagnostics. (*Id.* at 11-13.) On October 19, 2015, D. Fields, R.N., responded to Plaintiff's initial grievance and described that from December 2015 through October 2015, he was seen for his IBS and hernia complaint "46 times between seven different providers," that Bentyl was discontinued, Ranitidine was prescribed, and that Dr. Denger recommended abdominal wall strengthening exercises. (*Id.* at 14.) Fields encouraged Plaintiff to continue to work with health services and follow his treatment plan. (*Id.; see also* Kidwell Decl. ¶¶ 19-21.) Plaintiff sought first and second level review, and relief was denied on February 21, 2017. (Am. Compl., ECF No. 19 at 15-21; Kidwell Decl. ¶¶ 22-26.)

In Grievance OSP-2017-12-007, dated December 1, 2017 and received by OSP on December 5, 2017, Plaintiff complained that medical personnel refused to answer his verbal questions relating to his past and current health. (Am. Compl., ECF No. 19 at 32.) Plaintiff asked that his questions be answered in an orderly, professional, and ethical manner. (*Id.*) Plaintiff sought first and second level review, and relief was denied on March 15, 2018. (*Id.* at 43; Kidwell Decl. ¶¶ 30-35.)

In Grievance OSP-2017-12-058, dated December 21, 2017 and received by OSP on December 22, 2017, Plaintiff complained that Defendant Sabrena McCaine was biased against him, that McCaine insists that he has IBS when Plaintiff believes he has been misdiagnosed, and that Plaintiff feels like he is dying. (Am. Compl., ECF No. 19 at 47-48.) Plaintiff sought first

and second level review, and relief was denied on July 9, 2018.   (Am. Compl., ECF No. 19 at 52-58, Kidwell Decl. ¶¶ 39-45.)

In Grievance OSP-2018-12-025, dated December 5, 2018 and received by OSP on December 7, 2018, Plaintiff complained that his IBS has been misdiagnosed, that his umbilical hernia was not properly diagnosed, that the Bentyl prescribed caused negative side effects, his other prescribed medications caused damaging side effects, his intestines are sensitive because of previous medications, and his quality of life has diminished due to the lack of proper treatment. (Am. Compl., ECF No. 19 at 62.)   On December 17, 2018, Adam Kidwell, OSP Grievance Coordinator, returned grievance OSP-2018-12-025 as closed because it relates to issues already being pursued in litigation.   (Am. Compl., ECF No. 19 at 63; Kidwell Decl. ¶¶ 56-57.)

In Grievance OSP-2018-12-027, dated December 5, 2018 and received by OSP on December 7, 2018, Plaintiff complained that Defendant Dravis refuses to treat his attention deficit hyperactivity disorder ("ADHD") with Ritalin, and that Dravis was aware that he refused to take his post-traumatic stress disorder ("PTSD") medication.   (Am. Compl., ECF No. 19 at 65.)   On December 20, 2018, Dr. Dravis responded to Plaintiff's grievance, indicating that Plaintiff's ADHD diagnosis was discontinued in 2006, that his problems with concentration and sleep are attributable to his PTSD diagnosis.   (Kidwell Decl. ¶ 61, Ex. 11, ECF No. 30 at 82.)   Dravis also indicated that Plaintiff stopped taking his prescribed medications (Effexor, Sinequan, and Klonopin), and that medical services had prescribed Cymbalta.   (*Id.*)   On January 4, 2019, Plaintiff sought a first level appeal, which was denied by Medical Director Christopher P. DiGulio, M.D., on January 18, 2019.   (*Id.* at 85-86.)   On January 25, 2019, Plaintiff sought a second level appeal, asking that his grievance be completed in a timely manner so that "I can attach it" to this

action. (*Id.* at 87-89.)   On February 19, 2019, Plaintiff filed the Amended Complaint, attaching his second level appeal of grievance OSP-2018-12-027.   (Am. Compl., ECF No. 19, at 69-71). Grievance 2018-12-027 was returned to Plaintiff on March 4, 2019, due to this pending litigation. (Kidwell Decl. ¶¶ 64-65, Ex. 11, ECF No. 30 at 87-90.)[4]

     D.   *Plaintiff Has Not Exhausted Grievance OSP-2018-12-027*

Defendants argue that Plaintiff has failed to exhaust grievance OSP-2018-12-027 concerning his Eighth Amendment deliberate indifference claim against Dr. Dravis.   In their motion, Defendants argue that Plaintiff failed to exhaust this grievance because he failed to wait for a response from the Assistance Director prior to including these allegations in his Amended Complaint. *See, e.g., McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2001) ("a prisoner does not comply with this requirement by exhausting available remedies during the course of the litigation"); *Cano v. Taylor*, 739 F.3d 1214, 1220 (9th Cir. 2014) (holding that to be properly exhausted under PLRA "claims that arose as a cause of action prior to the filing of the initial complaint may be added to a complaint via an amendment, as long as they are administratively exhausted prior to the amendment").   According to Defendants, absent a response from the Assistant Director, Plaintiff did not fully exhaust grievance OSP-2018-12-027, and his claims against Dr. Dravis concerning his ADHD and PTSD medications are unexhausted.   Defendants

\\\\\

---

[4] The court observes that Plaintiff has included numerous other grievances (e.g., OSP-2019-06-041, OSP-2019-06-045, OSP-2019-07-060, OSP-2019-07-067, OSP-2019-08-031, OSP-2019-09-033) in assorted filings that pertain to his various health issues.   (Pl.'s Decl., ECF No. 47 at 92-93, 124, 126; Pl.'s Second Add., ECF No. 59 at 5-8, 35; Pl.'s Third Add., ECF No. 64 at 4, 19, 46-47, 67, 80-81.)   The court declines to consider the merits of these grievances or whether they have been properly exhausted because they were not identified in the Amended Complaint.

concede that Plaintiff has exhausted the remaining grievances attached to the Amended Complaint and argue that the court should dismiss his unexhausted claims from this action.    The court agrees.

Under the PLRA's mandatory exhaustion requirement, the court is simply not at liberty to excuse a failure to exhaust administrative remedies unless Plaintiff demonstrates those remedies are "unavailable."    *Ross v. Blake*, 136 S. Ct. 1850, 1858-60 (2016) (discussing situations where remedies are deemed unavailable and inmates are excused from exhausting them); *see also Scott v. Myrick*, Case No. 2:16-cv-00618-YY, 2017 WL 6271471, at *4 (D. Or. Sept. 18, 2017), *adopted by* 2017 WL 6271465 (Dec. 8, 2017) (finding inmate failed to show prison administrator thwarted opportunity to file grievance).

In his response, Plaintiff acknowledges that he has not exhausted the grievance process as it relates to his ADHD and PTSD medications.    Plaintiff argues that he was misled by Defendants and asks that court compel Defendants to provide him with the proper medication.    (Pl.'s Resp. Mot. Summ. J. at 10, ECF No. 46.)    Plaintiff appears to contend that he could not complete the second level appeal process because the grievance was returned.    The undisputed evidence in the record refutes Plaintiff's argument.

The record shows that Plaintiff submitted his second-level appeal on January 25, 2019, and that it was received and logged on January 29, 2019.    (Kidwell Decl. ¶¶ 64-65, Attach. 11, ECF No. 30 at 87-90.)    Under OAR 291-109-0170(e), the Assistant Director had thirty calendar days from the date is was received, or until February 28, 2019, to respond to Plaintiff's appeal. However, Plaintiff did not wait for a formal response from the Assistant Director and attached grievance OSP-2018-12-027 to his Amended Complaint on February 19, 2019.    It was only after Plaintiff included the grievance in the current litigation that it was returned to him on March 4,

Page 12 – OPINION AND ORDER

2019.   Plaintiff never explains why he failed to wait for a second-level response to grievance OSP-2018-12-027 before filing the Amended Complaint, and no explanation is apparent from the record.

Further, the evidence shows that Plaintiff appeared to understand that Defendants were required to respond to his second-level appeal to fully exhaust his administrative remedies, as he insisted that they respond in a timely manner so that he could "attach it" to his ongoing "formal litigation."   (Kidwell Decl. ¶ 61, Attach. 11, ECF No. 30 at 89.)   Similarly, Plaintiff makes no argument that he was prevented from seeking an extension of time so that he could fully exhaust grievance OSP-2018-12-027 before including it with his Amended Complaint.   On January 2, 2019, Plaintiff sought an extension of time to file an Amended Complaint, unopposed by Defendants.   (ECF Nos. 15, 16.)   The court granted him until February 15, 2019 to do so.   (ECF No. 17.)   On February 1, 2019, Plaintiff filed a Supplement indicating that he intended to attach grievance OSP-2018-12-027 to an amended pleading, but he failed to indicate that he needed additional time to exhaust the grievance.   (ECF No. 18.)   The court concludes that Plaintiff's arguments do not provide a basis to conclude that ODOC's administrative process was "unavailable" to him.

Plaintiff seems to suggest that he should be excused from the exhaustion requirement, but that relief is not appropriate here.   The record clearly demonstrates that Plaintiff understood that he needed to complete the second-level grievance process in a timely fashion, and that Plaintiff understood how to seek additional time from the court in this action.   Moreover, Plaintiff's multiple requests for additional time have been unopposed by Defendants and the court has consistently granted them.   Plaintiff has failed to provide any basis upon which this court could

conclude that his administrative remedies were somehow unavailable.  *See Harvey v. Jordan*, 605

F.3d 681, 683 (9th Cir. 2010) (finding prisoner failed to establish that he was prevented from filing

a timely grievance based on lack of information and thus failed to properly exhaust his

administrative remedies); *Uribe v. Gulick*, Case No. 2:18-cv-01809-MC, 2020 WL 797850, at *3

(D. Or. Feb. 14, 2020) (finding prisoner failed to exhaust grievance where he failed to correct

grievance to comply with relevant procedures and rules, then included grievance with federal

complaint prior to completing final level of grievance appeal); *cf. Marella*, 568 F.3d at 1027

(holding that administrative remedies may be effectively unavailable where the prisoner lacks the

necessary forms or is reliably informed that he cannot file a grievance).    Thus, the court concludes

that there is no factual dispute that Plaintiff could have completed the final level of review prior to

filing his Amended Complaint and, accordingly, the court finds that Plaintiff's Eighth Amendment

claims against Dr. Dravis are not properly exhausted under the PLRA.

Next, the court must determine how to proceed with Plaintiff's mixed complaint containing

both exhausted and unexhausted claims.  *See Lira*, 427 F.3d at 1175 (holding court must examine

how intertwined the exhausted and unexhausted claims are to assess whether the exhausted claims

may proceed independently).    Although the exhausted and unexhausted claims in this action are

related through references to alleged lack of care, alleged misdiagnosis, pain, and gastrointestinal

difficulties, they are not difficult to untangle.    Plaintiff's unexhausted claims involve a different

Defendant, with distinct events, at a different time.    Plaintiff's allegations concerning Defendant

Dravis's refusal to prescribe him Ritalin for ADHD in December 2018, are distinct from his claims

against the other Defendants concerning his IBS symptoms, his umbilical hernia, and the refusal

to provide him a surgical repair occurring in 2016 and 2017.    Thus, the court concludes it is

appropriate to dismiss the unexhausted claims and proceed to resolve Plaintiff's exhausted claims on other grounds. *Lira*, 427 F.3d at 1175; *Scott*, 2017 WL 6271471, at *1-2 (distinguishing between exhausted and unexhausted claims).

Defendants concede that Plaintiff has fully exhausted the Eighth Amendment claims premised on the other grievances attached to his Amended Complaint (OSP-2016-10-006, OSP-2017-12-007, OSP-2017-12-058, and OSP-2018-12-025). However, Defendants contend that they are entitled to summary judgment on Plaintiff's remaining allegations because they are barred by issue preclusion. The court addresses Defendants' contention below.

II.    Issue Preclusion

   A.    *Standards*

Issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated, or resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Dauven v. U.S. Bancorp*, No. 3:18-CV-01637-AC, 2019 WL 2488721, at *7 (D. Or. Apr. 11, 2019), *adopted by* 2019 WL 2494563 (D. Or. June 13, 2019) (quoting *Taylor v. Sturgell*, 553 U. S. 880, 892 (2008)). Issue preclusion is intended to "prevent parties from contesting matters that they have had a full and fair opportunity to litigate" and "protect against 'the expense and vexation attending multiple lawsuits, conserve[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Dauven*, 2019 WL 2494563 at *7 (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)). "Once a court has decided an issue, it is 'forever settled as between the parties[.]'" *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015) (quoting *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931)).

District courts must apply the issue preclusion principles of the state. *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 760 (9th Cir. 2014). "In Oregon, a party is precluded from subsequently litigating an issue of ultimate fact that has been determined by a valid and final determination." *Gooding v. Zuercher*, Case No. 3:18-cv-00015-YY, 2018 WL 4658710, at *3 (D. Or. July 23, 2018), *adopted by* 2018 WL 4658828 (Sept. 27, 2018) (citing *Nelson v. Emerald People's Util. Dist.*, 318 Or. 99, 103 (1993)). For issue preclusion to apply, Oregon requires that the following five requirements be met: (1) the issue in the two proceedings is identical; (2) the issue was actually litigated and was essential to a final decision on the merits in the prior proceeding; (3) the party sought to be precluded has had a full and fair opportunity to be heard on that issue; (4) the party sought to be precluded was a party or was in privity with a party to the prior proceeding; and (5) the prior proceeding was the type of proceeding to which this court will give preclusive effect. *Nelson*, 318 Or. at 104. "The party asserting issue preclusion bears the burden to establish the first, second, and fourth Nelson factors." *Gooding*, 2018 WL 4658710, at *4. The burden then shifts to the party opposing issue preclusion to negate the third and fifth factors. *Id.*

B.     *Plaintiff's Eighth Amendment Claims Are Barred by Claim Preclusion*

Plaintiff's Eighth Amendment claims concerning Defendants' failure to treat his gastrointestinal problems and surgically repair his umbilical hernia are barred by issue preclusion. As Defendants correctly highlight, Plaintiff previously litigated these issues in a habeas corpus proceeding, *Neubarth v. Kelly*, Marion County Circuit Court, Case No. 17CV3530 (the "habeas corpus action"). With respect to the first *Nelson* factor, Plaintiff asserted in the habeas corpus action that in 2007, he began reporting to OSP Health Services that he suffered from chronic

abdominal and gastrointestinal difficulties, including constipation, bloating, cramping, and severe pain. (Hallman Decl. Ex. 2 ("Replication") at ¶7, ECF No. 29 at 6.) Plaintiff asserted that he was diagnosed with irritable bowel syndrome ("IBS") in 2007 and given medication which did not alleviate his symptoms. (*Id.*) Plaintiff further asserted that in May 2016, he was suffering from severe and chronic pain, abdominal bloating, sleep deprivation, extreme weight fluctuations, anxiety, and evidence of a hernia. (*Id.* ¶ 8.) Plaintiff contended that he was diagnosed with an umbilical hernia by Dr. Strauss on January 6, 2017, that Dr. Strauss recommended surgery to the TLCC, and that TLCC denied surgery. (*Id.* ¶ 9.)

The court finds that the gastrointestinal issues and umbilical hernia presented in his habeas corpus action and the gastrointestinal and hernia issues presented in this civil rights action are the same: whether the Defendants violated his Eighth Amendment rights in failing to adequately diagnose and treat his gastrointestinal issues and refusing to provide him a surgical remedy for his umbilical hernia. The second *Nelson* factor is satisfied because the issues were actually litigated and were essential to a final decision on the merits in the habeas corpus action. In a March 21, 2018 letter opinion, Marion County Circuit Court Judge Courtland Geyer granted Defendant's motion to dismiss, finding that Plaintiff had failed to establish the element of deliberate indifference. (Hallman Decl. Ex. 5 at 2.) Judge Geyer further found that when viewing the evidence in the light most favorable to Plaintiff, "the finder of fact could do no more than conclude that there is a difference of medical opinion in how to treat Plaintiff's hernia." (*Id.*) Plaintiff asserts the identical issues here: whether Defendants' failure to adequately diagnose and treat his gastrointestinal problems and umbilical hernia rises to deliberate indifference under the Eighth Amendment.

The Third and Fourth *Nelson* factors are satisfied because Plaintiff was a party to the habeas corpus action and he was represented by counsel.    As Judge Geyer's March 21, 2018 letter opinion indicates, Plaintiff submitted a sworn statement in response to the Motion to Dismiss, as did Plaintiff's counsel.    (Hallman Decl. Ex. 5.)    Thus, the issues were fully briefed and were expressly decided before a judgment was entered.    (*Id.* Ex. 1 at 2.)    Moreover, Plaintiff filed an appeal, which he later dismissed on July 31, 2018.    (*Id.*)    Finally, the Fifth *Nelson* factor is met. The Marion County Circuit Court's Judgment on a motion to dismiss in a habeas corpus action is the type of proceeding to which this court gives preclusive effect.    *See Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1346 (9th Cir. 1981) (holding that a judgment in a state habeas corpus proceeding precludes an identical issue from being re-litigated in a subsequent § 1983 action); *Zielinski v. Deihl*, Case No. 10-449-CL, 2011 WL 7422503, at *2 (D. Or. July 7, 2011), *adopted by* 2012 WL 629516 (Feb. 24, 2012) (finding prior state habeas action barred litigation of same issues in § 1983 action).    Thus, Plaintiff's current Eighth Amendment claims concerning his gastrointestinal problems and denial of hernia surgical repair are barred by the doctrine of issue preclusion.

Plaintiff argues that the elements for issue preclusion are not met.    However, the results of an examination of Defendants' exhibits referenced above and a comparison of the claims in the state court proceeding to Plaintiff's Amended Complaint in this case refute his argument.    The court finds that Plaintiff's has raised the same constitutional claims concerning his gastrointestinal issues and surgical hernia repair in the habeas corpus action and in this § 1983 action, and he was provided a full and fair opportunity to present his constitutional claims previously.    Accordingly, Defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claims.

Page 18  – OPINION AND ORDER

*Discussion – Medical Injunction*

On March 27, 2019, Plaintiff filed a Motion in Ex Parte for Medical Injunction, in which he contends that he is entitled to emergency medical care and that he had a CT scan on March 14, 2019, but that Defendants are withholding the test results.   (Mot., ECF No. 24 at 1.)   According to Plaintiff, his evening medication causes him pain and he is unable to sleep.   (Mot., ECF No. 24 at 6.)   Plaintiff contends that the CT scan results will show why he is in constant pain and that he requires surgery.   (ECF No. 24 at 8.)   Plaintiff argues that he is in so much pain, he cannot sleep or eat, he is weak and confused, his chest is tight, and that it is hard to swallow.   (*Id.*; and Neubarth Decl. Supp. Mot. Medical Inj., ECF No. 25 at 1.)

Defendants object to Plaintiff's motion, asking that the court construe it as a request for a preliminary injunction, and argue that it should be denied because Plaintiff seeks relief not asserted in his Amended Complaint and cannot establish a reasonable likelihood of success on the merits.

*Legal Standards – Injunction*

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."   *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008).   A plaintiff seeking a preliminary injunction generally must show that:   (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) an injunction is in the public interest.   *Winter*, 555 U.S. at 20 (rejecting the Ninth Circuit's earlier rule that the mere "possibility" of irreparable harm, as opposed to its likelihood, was sufficient, in some circumstances, to justify a preliminary injunction).   The Supreme Court's decision in *Winter*, however, did not disturb the Ninth Circuit's alternative "serious questions" test.   *All. for*

*the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).   Under this test, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the Winter test are also met." *Id.* at 1132.   Thus, a preliminary injunction may be granted "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012) (citing *Cottrell*, 632 F.3d at 1131-32); *Obataiye-Allah v. Steward*, Case No. 2:19-cv-00068-JR, 2019 WL 3945227, at *1 (D. Or. Aug. 21, 2019) (discussing preliminary injunction standards).

I.    <u>Plaintiff Cannot Establish Likelihood of Success or Irreparable Harm</u>

Having carefully reviewed Plaintiff's filings, he has not made the showing required for an injunction to issue.   First, Plaintiff has failed to show that he is likely to succeed on the merits of his underlying Eighth Amendment claim.   To prevail, he must make two showings:   (1) a serious medical need; and (2) deliberate indifference.   *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).   "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallet v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002).   As detailed above, Plaintiff previously asserted these claims in his habeas corpus action in state court.   In that case, Judge Geyer dismissed these claims, finding that at best, the record showed a difference of medical opinion in how to treat Plaintiff's hernia. (Hallman Decl. Exs. 1, 5.)   Plaintiff's previous attempt to assert his claims was not successful, and therefore, Plaintiff has not demonstrated a reasonable likelihood of success on the merits of

his current claims.    As discussed above, Plaintiff's current attempt to relitigate his earlier Eighth Amendment claims are barred by issue preclusion.    Additionally, Plaintiff fails to demonstrate that failure to provide him with the March 14, 2019 CT scan results could constitute "deliberate indifference."    *See Gamble*, 429 U.S. at 105 (holding "an inadvertent failure to provide adequate medical care" does not constitute a constitutional violation).    Thus, Plaintiff cannot show a reasonable likelihood of success on the merits necessary for this court entertain an injunction.

Second, to the extent that Plaintiff's motion seeks emergency medical care and access to the results of a March 14, 2019 CT scan, his claim similarly fails.    The evidence Plaintiff submitted in response to Defendants' summary judgment motion reveals that he has been provided with the results from the March 14, 2019 CT scan and a June 20, 2019 ultrasound, and that the results "do not show any evidence of an abdominal hernia at this time."    (Pl.'s Decl. Supp. Resp., Ex. 92, ECF No. 47 at 126.)    Similarly, treatment notes from June 13, 2019, show that examination fails to reveal an umbilical hernia.    (*Id.* Ex. 95, ECF No. 47 at 175.)    Plaintiff insists that he is in constant pain, that he cannot eat or sleep, and that Defendants are denying him care, including surgical repair for his umbilical hernia.    (Mot. Med. Inj. at 1-5, ECF No. 24 at 1-5.) Although Plaintiff alleges that he suffers a life-threatening condition, the record before the court shows that Plaintiff's condition is being monitored and he has been prescribed medication.    (*See.,* *e.g.,* Pl.'s Third Add., ECF No. 64 at 4, 46-47.)    Thus, Plaintiff has failed to establish that he will suffer irreparable harm if does not receive emergency medical treatment for his alleged pain, or if he fails receive the results of his March 14, 2019 CT scan.

Third and finally, Plaintiff fails to establish irreparable injury.    The record shows that Plaintiff has been complaining to OSP medical staff of severe abdominal pain, chronic pain,

gastrointestinal issues (bloating and cramping), extreme weight fluctuations, anxiety, and sleep deprivation since at least May 2016. (Decl. Andrew Hallman Supp. Defs.' Mot. Summ. J. ("Hallman Decl.") Ex. 2 at 3, ECF No. 29 at 7.) In his Reply, Plaintiff acknowledges that he has been suffering for years with his hernia and gastrointestinal issues. (Pl.'s Reply at 1-2, ECF No. 48 at 1-2.) Plaintiff insists that he requires abdominal surgery to repair his umbilical hernia because it has worsened and that he now requires abdominal wall repair from the midline to the breastplate. Plaintiff alleges the tissue is so sensitive, it becomes irritated when lying on his back. (*Id.* at 2-3.) Although Plaintiff alleges that his condition is worsening, he has been making substantially similar allegations since 2016 (Compl., ECF No. 2 at 12-14 (detailing grievance OSP-2016-10-006A & AA)), and the evidence he submitted fails to support his allegations. (Pl.'s Decl. Supp. Resp., Ex. 92, ECF No. 47 at 126) (stating that the March 2019 CT scan and June 2019 ultrasound do not show abdominal hernia); (*Id.* Ex. 95, ECF No. 47 at 171) (May 15, 2015 treatment notes indicating Plaintiff is fixated on his request "request for surgery for his unidentified umbilical hernia," assessing malingering); (*Id.* Ex. 95, ECF No. 47 at 175) (treatment notes stating that examination on June 13, 2019 fails to reveal umbilical hernia); (Pl.'s Third Add., ECF No. 64 at 4 (Plaintiff's medical record shows no evidence of abdominal tissue separation as of September 13, 2019)).

Based on the court's careful review of the record, Plaintiff has been prescribed medication, but refuses to take it, and the ODOC physicians are monitoring his condition. Plaintiff must establish that "irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." *Cottrell*, 632 F.3d at 1131 (emphasis in original). Plaintiff has failed to demonstrate

that irreparable harm is the likely result of not receiving injunctive relief.   *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

In short, for all these reasons, Plaintiff's Motion for a Medical Injunction is DENIED.

*Conclusion*

Based on the foregoing, Defendants' Motion for Summary Judgment (ECF No. 28) is GRANTED.   Plaintiff's claim against Defendant Dravis is dismissed, without prejudice, because Plaintiff failed to exhaust his administrative remedies before filing his Amended Complaint in this case.   The remaining Defendants are entitled to judgment as a matter of law on the remaining claims because those claims are barred by issue preclusion.   Plaintiff's Motion in Ex Parte for Medical Injunction (ECF No. 24.) is DENIED.   Any pending motions are DENIED as MOOT.

IT IS SO ORDERED.

DATED this 21st day of May, 2020.

JOHN V. ACOSTA
United States Magistrate Judge

Page 23 – OPINION AND ORDER